IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WADE A. SCHAUER,

    Plaintiff,

v.

FIDELITY SECURITY LIFE INSURANCE
COMPANY,

    Defendant.

1:14cv0141 Erie
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

This is an insurance bad faith case under Pa.C.S.A. § 8371. This Court has diversity jurisdiction over the matter.

Presently before the Court are two motions: Defendant's Motion for Partial Judgment on the Pleadings (doc. no. 34) and Plaintiff's Motion for Judgment on the Pleadings.[1] Doc. no. 36. Plaintiff filed a Brief in Opposition to Defendant's Partial Motion (doc. no. 37), and Defendant filed a Reply Brief in support its own Motion for Partial Judgment (doc. no. 34), which also included a Brief in Opposition to Plaintiff's Motion (doc. no. 36). See doc. no. 38. Plaintiff filed a Brief in support of his own Motion. Doc. no. 39. Counsel contacted the Court and represented that these matters are fully briefed and thus, ripe for adjudication.

After careful consideration of all the aforementioned submissions, the Court will DENY Defendant's Partial Motion (doc. no. 34), and will GRANT Plaintiff's Motion (doc. no. 36) by way of an Order filed contemporaneously with this Opinion. The Court's reasons for entering this Order will be discussed in detail below.

---

[1] The Court notes that although Plaintiff's Motion for Judgment is styled as such, it is actually a Motion for Partial Judgment on the Pleadings.

## I. STANDARD OF REVIEW

Both Parties have filed a Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendant filed a Motion for Partial Judgment on the Pleadings (doc. no. 34), while Plaintiff filed a Motion for Judgment on the Pleadings. Doc. no. 36.

Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. *See also Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 Fed. Appx. 143, 147 (3d Cir. 2011).

Rule 12(b)(6), provides the standard of review applicable to motions for judgment on the pleadings and motions to dismiss. The Court is permitted to consider, in addition to the allegations of the Complaint, "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Thus, when deciding a motion filed in accordance with Rule 12(c), a Court must accept the factual allegations as true and draw all reasonable inferences presented in the pleadings in the light most favorable to the plaintiff. *Erickson v. Pardus*, 554 U .S. 89, 93–94 (2007); *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir.2004). If the facts alleged by the plaintiff are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its fact," a complaint will survive a motion to dismiss, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or a motion for judgment on the pleadings, *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

**II. Factual Background**

The following facts are undisputed (unless indicated otherwise) and material to this Court's analysis and decision.

Plaintiff purchased an Insurance Policy, number 71312N, from Defendant. Doc. nos., 27 and 30, ¶ 6. This Policy was attached to the Amended Complaint. Doc no. 27-1. The policy contains a page that bears the following heading:

OUTLINE OF COVERAGE
INDVIDUAL DISABILITY INCOME INSURANCE
Policy Form M-4025PA

Doc. no. 27-1, p. 2. The Court will therefore refer to this insurance policy as a "disability insurance policy."

The disability insurance policy indicates that Defendant will pay benefits to Plaintiff if six criteria are met. Id. The policy also notes that amount payable "will be to a maximum of 60% of [Plaintiff's] Monthly Earned Income on the date [Plaintiff] becomes Totally Disabled due to Injury or Sickness, not to exceed the Maximum Monthly Benefit Amount shown in the Schedule of Benefits." Id.

The disability insurance policy further indicates that Defendant "will not pay for a Disability caused by a Pre-existing Condition until after [Plaintiff] has been covered under this Policy for 24 months." Id., p. 5. With respect to a reduction of disability benefits, the disability insurance policy indicates: there will be a 50% reduction in benefits for individuals who are age 65 and older; benefits can be reduced for benefits payable under Workers' Compensation Law, Occupational Disease Law, the 4800 Time Benefit Plan, or similar legislation; and benefits can be reduced if the individual has (and presumably receives) other disability insurance coverage. Id., p. 6.

There is a three-page application attached to the end of the disability insurance policy, which was attached to the Amended Complaint. Question no. 31, asks whether Plaintiff has "ever made claim or received benefits for disability from any source[,]" and Plaintiff indicated that he had by checking the "yes" box and signing the application. Id., p. 33. As a result of this affirmative answer (and others), Plaintiff had to "give details" on the "Health History Continuation Form[.]" The details Plaintiff provided on the Form as to question no. 31 indicate that Plaintiff received short term and long term disability benefits after a 2005 motor vehicle accident. Id., p. 34. Plaintiff also indicated that he went "back to work in 2005 and haven't received any benefits since 2006 or 2007 beginning[.]" Id.

Question no. 35 on this same application asked Plaintiff to list all disability income coverage "in force or applied for, including individual disability income policies, sick pay plans, salary continuation plans, group long and short term disability coverage and credit disability insurance[.]" Plaintiff indicated "none" by checking a box. The application is stamped "received" (presumably by Defendant) on September 9, 2011. Id. p. 32.

The final relevant and material portion of the disability insurance policy reads as follows:

> ***Incontestability:*** After this Policy has been in force or reinstated for two years during the [Plaintiff's] lifetime, no statement made by the [Plaintiff] can be used in a contest; it can only be contested for non-payment of premiums. No statement the [Plaintiff] makes can be used in a contest unless it is in writing and signed by the Insured.

Id., p. 20.

Plaintiff suffered bodily injury on December 21, 2011, a little more than three months after applying for and purchasing the disability insurance policy from Defendant. Doc. nos., 27 and 30, ¶¶ 7-8. Plaintiff filed a claim with Defendant for disability benefits under his disability insurance policy, and Defendant admits to the following:

4

> a. Plaintiff's average Monthly Earned Income is $12,797.55 (as set forth in a letter dated June 28, 2013 from Defendant to Plaintiff's attorney);
>
> b. Plaintiff's monthly benefits was 60% thereof or $7,678.53 (as set forth in a letter dated June 28, 2013 from Defendant to Plaintiff's attorney);
>
> c. Defendant offset $1,683 for Plaintiff's Veterans Administration Disability Compensation benefits (as Defendant admits in its pleading (doc. no. 30, p. 3) but asserts that it stopped offsetting this amount); and
>
> d. Defendant claimed it had made an overpayment in the amount of $52,863.88 and applied an offset against Plaintiff's monthly disability benefit through March 21, 2017 in the amount of $1,289.36 (as set forth in a letter dated October 17, 2013 from Defendant to Plaintiff's attorney).

Doc. nos. 27 and 30, ¶ 13.

On August 18, 2014, Defendant filed an Answer, New Matter, and Counterclaim to his original Complaint and in this pleading, Defendant relied upon statements in Plaintiff's insurance application for asserting some of his defenses and his counterclaim. See doc. no. 5. On February 10, 2015, Plaintiff filed an Amended Complaint. See doc. no. 27.

On February 17, 2015, Defendant filed an Answer, New Matter, and Counterclaim to the Amended Complaint. See doc. no. 30. In its Ninth Affirmative Defense, Defendant asserted the following:

> If discovery discloses that Plaintiff failed to properly answer one or more of the questions in the Application for Individual Disability Insurance, then such failure will be raised at the time of trial and, if warranted, a Counterclaim will be pursued against Plaintiff.

Doc. no. 30, ¶ 40. Similarly, Defendant's Eleventh Affirmative Defense reads as follows:

> . . . if evidence developed during the course of discovery reveals that Plaintiff did not accurately answer the questions in the Application for Individual Disability Insurance and if accurate answers by Plaintiff would have either led to a decision by FSL not to offer Disability Insurance to Plaintiff or would have resulted in a lower offer by FSL to Plaintiff of the maximum monthly disability benefit amount for total disability, then same

>will be asserted as an additional affirmative defense and/or an additional counterclaim at the time of trial.

Id., ¶ 43.

Defendant's Counterclaim indicates that Plaintiff (*inter alia*) misrepresented that he was receiving no disability coverage when he applied for benefits from Defendant. Id., ¶¶ 46-63. A portion of Defendant's Counterclaim suggests it would have paid Plaintiff less disability benefits if Plaintiff had indicated he received Veterans Administration Disability Compensation benefits. Id.

Plaintiff's Motion seeks a partial Judgment on the Pleadings precluding Defendant from asserting its Nninth and Eleventh Affirmative Defenses as well as advancing the allegations set forth in paragraphs 46 though 51 of its Counterclaim. See doc. nos. 36, 39. Plaintiff predicates his Motion on the "Incontestability" clause of the disability insurance policy. Id.

Defendant counters with its own Motion seeking partial Judgment on the Pleadings arguing that the "Incontestability" clause does not preclude it from predicating its Ninth and Eleventh Affirmative Defenses as well as its Counterclaim on statements Plaintiff made in his application. Accordingly, Defendant requests that all references to the Incontestability clause be stricken from the Plaintiff's Amended Complaint.

**III. Discussion**

**A. The Incontestability Clause**

"The incontestability clause in insurance policies was introduced by English life insurance companies in the middle of the nineteenth century to overcome public resistance to the purchase of such insurance, and was adopted in the United States for similar reasons." *Suskind*

*v. North American Life & Cas. Co.*, 607 F.2d 76, 80 (3d Cir. 1979). The United States Court of Appeals for the Third Circuit in *Suskind* also noted:

> Exposure of various abuses in the life insurance industry led President Theodore Roosevelt to call a conference in 1906 which recommended enactment of uniform life insurance laws. Included among the recommendations was the suggestion for a provision making the policy incontestable after two years from its issue date. This, in time, was adopted by most states.

*Id*. Thus, this particular insurance clause was created and inserted into policies to foster and breed confidence among the public when purchasing insurance policies.

As defined by case law, "[a]n incontestability clause is a contractual provision wherein the insurer agrees that, after a policy has been in force for a given period of time, it will not contest the policy based on misrepresentations in the insurance application." *PHL Variable Ins. Co. v. ESF QIF Trust by and through Deutsche Bank Trust Co.*, 2013 WL 6869803, *3, n. 2 (D. Del. 2013).

Under Pennsylvania law, "an incontestability clause generally prohibits an insurance company from contesting the validity of the insurance policy for fraud and misrepresentation in the application after the contestability period is over, unless the contestability clause provides for an exception, such as nonpayment of premiums." *Reassure America Life Ins. Co. v. Midwest Resources, Ltd.*, 2011 WL 672566, *4 (E.D. Pa. 2011), citing *New York Life Ins. Co. v. Johnson*, 923 F.2d 279, 280 (3d Cir. 1991) ("The decided Pennsylvania cases have held that an insurance policy obtained by means of material misrepresentation will, if challenged within the period of contestability, be declared void ab initio."); and *Feierman v. Eureka Life Insurance Co.*, 124 A. 171 (Pa. 1924) ("The [incontestability] clause means precisely what its language states: the policy will not be challenged, opposed or litigated, and is indisputable after two years.").

In *Groll v. Safeco Life Ins. Co.*, 566 A.2d 269, 559 (Pa.Super. 1989), the Superior Court of Pennsylvania held that "[i]n cases involving incontestability provisions in individual life insurance policies, Pennsylvania case law draws a distinction between questions of policy validity and questions of policy coverage." The Superior Court further explained that "[a]n incontestability clause bars the insurer from challenging the validity of the policy, but does not bar a challenge to policy coverage. *Id.*, citing *Perilstein v. Prudential Insurance Company of America*, 345 Pa. 604, 29 A.2d 487 (1943).

In *Groll*, Safeco, issued a group policy to Kaplan Company on the lives of Kaplan's "full-time" employees, defining full-time employees as those who worked a minimum of thirty-hours per week. *Id.* at 557. Groll, an employee of Kaplan, completed an enrollment card for the Safeco insurance, and premiums were paid from November 1, 1982 (the effective date of the policy) through January 1, 1986, the date of Groll's accidental death. *Id.* Kaplan submitted a claim to Safeco for Groll's death, but Safeco refused to pay the proceeds because Groll was not a full-time employee. *Id.* at 557-58. Groll's widow sued Safeco asserting her entitlement to collect the proceeds of the policy despite her deceased husband's ineligibility because the policy contained an incontestability clause. *Id.* at 558. The widow contended that pursuant to the incontestability clause, Safeco was barred from asserting her deceased husband's former employment status as a defense for non-payment of the proceeds because it failed to contest his eligibility within the two-year time period mandated by the policy's incontestability clause. *Id.* After admitting that no material facts were in dispute, both parties filed motions for summary judgment, which the trial court granted in favor of the widow and which the Superior Court affirmed on appeal. *Id.*

Finding that its own set of facts created a case of first impression for a Pennsylvania appellate court, the Superior Court in *Groll* looked to other jurisdictions to draw a distinction between "conditions of insurance" and "limitations on coverage." *Id.* at 559. The Court determined that in Pennsylvania, defenses based on conditions of insurance, like those based on policy validity, should be barred; but, defenses based on coverage limitations, like those based on policy coverage, should be allowed. *Id.* Turing to the facts of its own case, the Superior Court noted that the insurance policy in question was in effect long enough to trigger the incontestability clause; and therefore, framed the issue so as to determine whether eligibility for coverage under a group policy was a condition of insurance or a limitation on coverage. *Id.*

Relying on factually similar New York case, the Court in *Groll* held that "conditions of insurance are those matters which can be discovered by investigation at the time the policy is issued, whereas limitations of coverage are risks which the insurer cannot otherwise guard against." *Id.* at 560-61 (citation omitted). The Court further noted that when eligibility can "be discovered by simple investigation" the defense of ineligibility is barred by an incontestability clause. *Id.* at 561.

Turning to this case, this Court believes that the test set forth in *Groll* controls the analysis of the instant issue. Accordingly, this Court must determine whether the two affirmative defenses and certain portions of the Counterclaim asserted by Defendant are based on a condition of insurance, or, to the contrary, based on coverage limitations. If the affirmative defenses and Counterclaim are predicated upon a condition of insurance, pursuant to Pennsylvania law, this Court must bar those defenses and claims; alternatively, if the defenses and Counterclaim are predicated upon coverage limitations, they must be allowed.

9

Instead of arguing that its affirmative defenses and Counterclaim are predicated upon coverage limitations, Defendant argues that any incontestability clause – including its own – merely prevents an insurer from challenging the validity of an insurance policy as a whole. Doc. no. 34-1, p. 3. Defendant asserts that because it is not seeking to rescind its insurance contract with Plaintiff, it is not challenging the validity of the disability insurance policy as a whole, and thus, the incontestability clause is not triggered. Defendant essentially agrees that it must provide disability coverage to Plaintiff and is not challenging the validity of the policy; rather, Defendant wants to decrease the amount of disability coverage being provided because of Plaintiff's alleged application misrepresentations. By not challenging the overall validity of the contract, Defendant argues the incontestability clause is inoperable.

This Court disagrees with Defendant's position for two reasons. First, as cited above, the United States Court of Appeals for the Third Circuit in *Suskind* gave a detailed history in relation to incontestability clauses and noted that these clauses arose to encourage the public to purchase insurance and breed confidence among the public that they would be free from insurance industry abuses in doing so. Defendant's characterization that an incontestability clause can only be used to prevent an insurer from challenging the validity of an insurance policy as a whole, appears contrary to the original intent of the insertion of such a clause (which was to bolster public confidence to overcome public resistance to the purchase of such insurance policies).

Second, the Court finds that Defendant's affirmative defenses and Counterclaim are predicated upon "conditions of insurance" and not "coverage limitations." In reaching this conclusion, the Court notes that the Pennsylvania Superior Court has defined a "condition of insurance" as "those matters which can be discovered by investigation at the time the policy is

issued" as compared to a "limitation of coverage" which is a "risk which the insurer cannot otherwise guard against." *Groll* at 560-61.

It is uncontested in this case that Plaintiff, in his application for individual disability insurance coverage, indicated that within the past five years, he "had medical or surgical advice or treatment, had a physical examination, or been under observation for any disease or disorder." Doc. no. 27-1, p. 32. Plaintiff also indicated on the same application that he had "made a claim or received benefits for disability from any source[.]" Id., p. 33. Plaintiff indicated that he had stopped receiving those benefits as of 2006 or the beginning of 2007. Id., p. 34. Plaintiff also indicated on the application that he was not receiving any "disability income coverage" and that he had not applied for any as of the date of the application (September 1, 2011). Id., p. 33.

Defendant now wants to use Plaintiff's alleged failure to disclose on his application that he received or was receiving veterans' disability benefits. However, given Plaintiff's answers on the application, it was clear that Plaintiff had some form of disability in the past and received benefits for that disability, and the Defendant could have and should have done its own investigation before issuing its disability policy or anytime during the two years following its receipt of the application. Moreover, Plaintiff submitted his claim to Defendant for disability benefits within four months of applying for and purchasing the disability insurance policy coverage and thus, Defendant could have done a vigorous investigation within the two-year time period.

### IV. Conclusion

This Court finds that the Incontestability clause is enforceable because more than two years have passed from the time Plaintiff completed his application to the time that Defendant

11

sought to use Plaintiff's application statements against him.  The Incontestability clause is also enforceable, because as a "condition of insurance," Defendant could have "discovered [the veterans' disability benefit payment] by investigation at the time the policy [was] issued" or anytime within the two years subsequent to the issuance.

Accordingly, the Ninth and Eleventh Affirmative Defenses of Defendant's Answer and paragraphs 46 through 51 of its Counterclaim shall be stricken.  Plaintiff's Motion for [Partial] Judgment on the Pleadings shall be granted and Defendant's Motion for Partial Judgment on the Pleadings shall be denied.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:     All Registered ECF Counsel and Parties